I'd like to reserve three minutes if I may for rebuttal. On February 24th, 2003, my client, Daniel Lee Bromlie, was in a state of emotional turmoil. He had recently lost his sister, was the first of his siblings that had passed away. And during that evening, he watched a video of her, kind of recapping her life. And that video affected him deeply. Now, Mr. Bromlie has a long history with regard to his legs. He was born with club feet. And multiple surgeries later, he actually had to have one of his legs removed. So his entire life he's dealt with pain, severe chronic pain. And the record below establishes pretty clearly that Mr. Bromlie used marijuana to deal with the pain that he'd been in his entire life because of his physical condition. That night he had used marijuana. That's clear. He admitted to that at his change of plea. Was never deceptive whatsoever about that. Because of his state of turmoil, Mr. Bromlie decided that he'd commit suicide that night. So he retrieved a .40 caliber gun. And in front of his wife, he cocked the gun and pointed it at his throat and asked that she help him kill himself. At that point, of course, she called the police. The police came. Mr. Bromlie was arrested. And this indictment resulted. Now, for this conduct, Your Honors, Mr. Bromlie received eight years in federal prison. And the question that is before this Court is, is that sentence reasonable under Ninth Circuit post-Booker jurisprudence? I submit to the Court that because the district court did not consider and balance the relevant 35538 factors that work squarely before the Court concerning the nature of the offense conduct and also concerning the characteristics of the defendant. That was his version of what happened. Didn't the wife have a different version? She did, Your Honor. And one of the arguments here is that the district court erred in apparently accepting her version of events because the only sworn testimony that was presented during any of these proceedings was from my client at his change of plea hearing. And he specifically objected to her version of events. And there was never any rebuttal by the government or, indeed, any evidence whatsoever presented which would indicate that my client's version of events was not the correct one. So in adopting the hearsay statements of Mr. Bromlie's wife over the sworn statements of my client, I think that constitutes clear error, Your Honor. How were the wife's account of this interview? Was that in the pre-sentence report? Yes, Your Honor. And I think it was just the probation officer that interviewed her and put Pat in there. And also part of the argument was several technical objections to the way the guidelines were calculated. But for the purposes of this hearing, Your Honor, I think I would just like to concentrate on the reasonableness because I think that's what's interesting about this case. Now, the record below is striking. Was there a specific objection to the pre-sentence report to what the wife said and didn't say? Yes, there was, Your Honor. I specifically objected both in my sentencing memorandum and orally at the sentencing. And the court basically adopted the police report's version of what happened over those objections and without any apparent evidence supporting that. That was produced by the government. In fact, the government at one point actually invites the court to adopt Mr. Bromley's version of events. The exact language is, you know, you can adopt Mr. Bromley's version of events because it doesn't matter. What matters is the guideline range here. And that's what's striking about this whole sentencing proceeding is that it's completely divorced from the offense conduct, which was the entire reason everybody was there. If you look at the transcript of the entire sentencing proceeding, there is absolutely no record of the court ever considering the offense conduct or any of the mitigating factors that were presented to the court, both at the change of plea hearing, in the TSR, in the sentencing memorandum, and also during Mr. Bromley's allocution statement at sentencing. Those factors were basically there was this emotional turmoil that night. There was the evidence that Mr. Bromley was a user of marijuana because of his medical conditions. And there was also evidence about the gun. Basically, Mr. Bromley had stated multiple times, and also it was in the sentencing memorandum, that he had the gun because he thought his family was threatened. And the reason his family was threatened is because Mr. Bromley had earlier cooperated with law enforcement in a drug sting operation, which resulted in the federal prosecution of two big meth dealers in the Great Falls area. And they had made explicit threats against him. So that was the reason he had the gun. So those are kind of the three mitigating factors that were presented to the court for evaluation during the sentencing proceeding. And, of course, those factors were never considered. And, indeed, the actual offense conduct was never even considered. Now, as I've already stated, at one point the government invited the court to adopt Mr. Bromley's version of events. They never rebutted any of the mitigating evidence that was presented. And at no point did the court actually consider that evidence. Rather, the final sentence is determined entirely by the guideline calculation, and that, in turn, is determined by Mr. Bromley's past criminal history. So the final result of this whole proceeding is that Mr. Bromley was not sentenced based on what he did. He was sentenced based on what he did in the past. So there's no connection between the criminal conduct and the sentence in this matter. Now, the government argues that the sentence is reasonable because the court didn't have to explicitly address all the 355-3A factors, and also that in any event the court did address those factors. And they point to that section in the transcript in which the court just recites the 355-3A factors. The court says, I have to consider these. And then later the court says, I considered these. But there's no actual consideration of the factors, the emotional state, the marijuana, the gun, that was put forward by defense counsel and the defendant. So the argument is that in the Ninth Circuit Post Booker, you need more than that. You can't just recite the factors and leave it at that. You actually need to consider, balance, assess those factors that are solidly put before the court by defense counsel, by the government, or that the court thinks is relevant. You have to make some sort of record because in the Ninth Circuit, it's about reasonableness. There's a unitary standard of reasonableness. And in order for the circuit to assess what the district court's reasoning is in coming to a reasonable sentence, there has to be some sort of record. And here there is no record. Yes, Your Honor. I think that does it for me. I'll reserve the rest of my time. Mr. Wolfe? May it please the Court, I'm Eric Wolfe, Assistant U.S. Attorney for the District of Montana. I'd like to briefly explain why the guidelines calculation was correct on criminal history, and then I'll address reasonableness unless the court would prefer me to address that first. We have two objections from Mr. Bromley on the criminal history calculation. The first is on the DUI. And in our brief, we argue that that was waived because he notes that he would give himself zero points for it in his sentencing memorandum, but he never raises it at the sentencing hearing. And the court will find that at page 12 and page 18 of the sentencing transcript, if counsel is asked specifically are there any other objections, he doesn't bring this up. But putting aside waiver, the argument is that a DUI just shouldn't count because the sentence was more like careless driving. The guidelines are very clear on this. Application Note 5 of Guideline 481.2 says, quote, convictions for driving while intoxicated or under the influence are counted. And so that counts, and that's his first issue, and he loses on that issue. The second issue is the counting of a prior conviction involved in revocation of probation. Mr. Bromley has a very lengthy criminal history category. He is in the very last criminal history category on the guidelines because he scored 13 points. Now, he disputes two of those points by saying that a drug conviction where he had the suspended sentence, which would only get one point, was counted for three points when it got revoked, plus the conduct that led to revocation, that also got counted when he was sentenced on that conduct. Now, I just want one thing to be clear, and that is Chapter 4 of the guidelines are just straightforward on this. The Application Note 11 for 481.2 says that when you have a revocation and you get sentenced on that, that gets counted for the original conviction, and that's what the PFR rider did, and that was exactly right. And this court had the case directly on point. I only bring it up because we really should have had it in our brief, but it's United States v. Palmer, 946 F. Second, 97. That's a 1991 case. It is Mr. Bromley's situation exactly, and the PFR rider counted it correctly. So his first two issues in terms of guideline calculation, they're pretty easily resolved under the guidelines under this court's precedent. Now, going to reasonableness, Mr. Bromley wants to make this case all about offense conduct. And for the district court, the district court had that criminal history category, the highest criminal history category, 13 points. That was the big deal for the district court. And, you know, Judge Haddon is not the first judge to look at Mr. Bromley's criminal history and reach the conclusion he did. Back in 2001, Mr. Bromley was sentenced by Judge Harris, and this is recounted at page 12 of the PSR. And much like Judge Haddon, Judge Harris said at that time, defendant's record demonstrates that fines and even prison have no deterrent effect on the defendant's criminal activity. The only appropriate sentence for this individual is incarceration to prevent him from committing crimes. And that was Judge Haddon's conclusion as well, that, you know, we have Mr. Bromley's version of events. Only he knows whether that's true or not. It's disputed by his common law life. And it wasn't just disputed in the PSR. What he told the PFR rider was exactly what he told officers at the scene. Mr. Bromley said it happened differently. What Judge Haddon said, and I don't think he ever really resolved this, he says, you know what, for you, Mr. Bromley, drugs and guns are a very dangerous combination, and you're a threat to yourself and you're a threat to others. And to reduce that threat, he picked a sentence, a guideline sentence, at the top of the range. And given Mr. Bromley's criminal history, that sentence was entirely reasonable. And let the court ask further questions. I have a question for you. I'm sure you're aware that the circuit has gone en banc, has taken en banc both the Zavala case and the McCarty case. Should we defer resolving the reasonableness issue in this case until we see what the en banc court holds in the Zavala case? With respect to Zavala, Judge Haddon at no point says that I'm, you know, getting the guidelines the right way here or that I'm presuming the guideline sentence is reasonable. He really did the parallel analysis of calculation and then reasonableness, and he says a couple different times that this sentence, at the top of the guideline range, is the lowest reasonable sentence that I can give you, given your criminal history. So in terms of Zavala, even if the now vacated Zavala panel opinion became the en banc opinion, this case doesn't seem to present a Zavala issue. I understand that, but how do we really know what the en banc court is going to say in that case when it's taken two cases together, which may raise a number of issues about what this procedure should be? I certainly don't want to hazard a guess, and, you know, I realize this is a briefing order. The panelist said that it was going to start with jurisdiction and then, you know, several questions later end with everything that has to be considered in reasonableness. That pretty much runs the gamut. I certainly can't argue that some aspect of this case wouldn't fall within one of those questions presented. Thank you. Did Judge Hayden actually make a ruling as to the objection as to what the wife said the version of the sentence was? I believe he did. He just said, well, I won't bother. Unless the court wants me to, I can find the particular page. But I think he said, I'm going to accept what the PSR recounts. I don't think he gave that great weight. But he does give great weight, and it's very clear. This would be page 65 of the excerpts of record. And he's given great weight to the criminal history. And even if this was a suicide attempt, he said very clearly, Mr. Romney, for you, drugs and guns are very, very dangerous. You're a danger to yourself, and you're a danger to others. I don't think he gave that weight. Wait a second. Was there any specific objection that the statement of the wife was not under oath, it was hearsay? Does it make any difference? I suspect that the defense counsel did make an objection that it was hearsay. Obviously, in sentencing, the court can consider hearsay statements. Because they're hearsay, maybe they get less weight. But I guess Mr. Hoff would be in a better position to put his finger on exactly how he objected to that. Anything else, Judge Gould? Thank you very much, Judge Gould. Thank you, Your Honors. Just a few quick notes. As to Judge Gould's inquiry about Zavala, I think Zavala is important. Because what Zavala says, basically, is that in the recent Mohammed case, that in the Ninth Circuit, whether a sentence falls within a correctly calculated guideline range or not, what this court has to do is review the whole thing for reasonableness. The old Zavala precedent is gone now. Yes, I know. The case went unbanked. My only question is whether we have to wait to see what the unbanked court says. I think you do. Because I think Judge Haddon's ruling in this, or sentence in this case, is basically a presumptive guideline sentence. He concentrated very exclusively on the guideline calculation. And the transcript below indicates that he didn't, and neither did the government, spend any time on the actual assigned conduct or on the mitigating factors with regard to the defendant himself. So, in my mind, what that does is take that sentencing procedure out of the post-booker requirements that he did take a look at the relevant 3553A factors and kind of puts it back into the old style guideline sentencing regime where, you know, if there is a sentence within the guideline range, then it's presumptively reasonable. Well, in the Ninth Circuit now, that's no longer true. And so I think the outcome of the unbanked decision in Zavala is important to deciding whether this is a sentence that can be supported post-booker. Thank you. Mr. Wolf? Thank you as well. I just want to add a point of counsel that if we decide to wait for Zavala-Cardi, that I anticipate, you know, if we decide that's important after seeing what the unbanked battle does, that we would give counsel for both sides an opportunity to submit a supplemental brief and present it to the whole panel, not just to me, but that's my brief to make counsel's comment on whether that decision has any significance. Thank you, gentlemen.
judges: Silverman , Gould, Rhoades